HUBERT COTTON v. THE STATE.

No. 5948.    Decided March 9, 1921.

1.—Murder—Manslaughter—Charge of Court—Practice on Appeal.

. Where, upon an appeal from a conviction of manslaughter, upon an examination of the entire record, the charge of the court appeared to be fair and comprehensive, guarding the rights of appellant in every way, there was no reversible error on that ground.

2.—Same—Misconduct of Jury—Testimony Outside of Record—Statutes Construed.

Where it was claimed by appellant, under Article 837, C. C. P., Sub-Division 7, that after the jury retired to consider of their verdict, they received other testimony injurious to appellant, and alluded to former trials, in one of which defendant had a hung jury, and in another he was convicted, and given a term of twelve years in the penitentiary, and that his brother was also convicted for a term of five years in the penitentiary, the same is reversible error.

3.—Same—Testimony By Jurors—Misconduct of Jury—Former Conviction.

Where the testimony of the various jurors was conflicting, as to the particular time during the deliberation, when the conversation occurred with reference to the former conviction, but they all practically agreed that it was not until the second day that the jury was out, they having retired in the evening of the first day, and the vote at that time stood nine for conviction and three for acquital, and that all this discussion occurred on the next day, and a short time before they reached a verdict assessing defendant's punishment at thiee years confinement in the penitentiary, the same was reversible error.

4.—Same—Misconduct of Jury—Discussing Facts Outside of the Record.

Where the jurors discussed not only upon one occasion but upon a number of occasions, in their efforts to reach a verdict, the fact that the brother of defendant had been convicted and given five years in the penitentiary, and that the defendant himself had been tried, once with a hung jury, and again with a conviction, and a twelve-year sentence, and that this

was not a casual reference to the former conviction, but that it was by the jurors in connection with their arguments among themselves, the same constituted such misconduct as to reverse the judgment and remand the case for a new trial.

### 5.—Same—Rule Stated—Misconduct of Jury—Former Conviction.

The rule is that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried according to law, where the conviction was supported by the testimony, unless the court may fairly and reasonably see, in the light of all the circumstances, that such reference and discussion did or might have prejudiced the appellant's case. Following McDougal v. State, 81 Texas Crim. Rep., 179, and other cases.

### 6.—Same—Suggestion by Court—Practice in Trial Court—Former Trial.

It is suggested, that where such matters are likely to occur, the trial judges ought to instruct the jury in appropriate language that if any evidence is gotten before them as to any former trials, or if any of the jurors know of any former trial, or the result thereof, that they should not discuss nor consider the same upon their deliberation.

Appeal from the District Court of Hunt. Tried below before the Honorable R. L. Porter.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Neyland & Neyland*, and *Crosby & Harrell*, and *B. B. Sturgeon*, for appellant.—Upon question of misconduct of jury: Lankster v. State, 43 Texas Crim. Rep., 298; Mitchell v. State, 36 id., 315; McDougal v. State, 194 S. W. Rep., 944; Weaver v. State, 210 id., 698.

*Alvin M. Owsley*, Assistant Attorney General, and *Clark & Sweeton*, for the State.—Cited Austin v. State, 47 S. W. Rep., 371; Smith v. State, 106 id., 1161; Douglas v. State, 124 id., 937; Fox v. State, 109 id., 372; McDougal v. State, 194 S. W. Rep., 944.

HAWKINS, JUDGE.—The appellant was convicted of manslaughter, and his punishment assessed at three years confinement in the penitentiary.

This is the second appeal. The result of the first one will be found reported in 86 Texas Crim. Rep., 387, 217 S. W. Rep., 158.

The appellant presents many questions to this court for review with reference to the charge of the court, and exceptions thereto, and the failure of the court to give many special charges requested. Upon an examination of the entire record we believe the charge of the court was a fair comprehensive charge guarding the rights of appellant at all points and upon all issues, and that there is no error shown by the record with reference to these matters complained of.

There is, however, one serious question presented by the record, and that is as to the alleged misconduct of the jury. It is claimed that after the jury retired to consider of their verdict they received other testimony injurious to appellant in violation of Article 837 C. C. P., subdivision 7, providing that a new trial should be granted where the jury, after having retired to deliberate upon the case, have received other testimony. It is disclosed from the record that during the trial of this case many witnesses were asked if they had not, upon the former trial of the case, testified to certain matters. Therefore, there was legitimately before the jury evidence that there had been another trial of this case, but this is as far as the record goes. It now appears that there had in fact been two trials of this defendant, in one of which there was a hung jury and in the other he was convicted and given a term of twelve years. It also appears that appellant's brother had been tried and given a term of five years in the penitentiary. This information in some way reached the jury, and it was talked about and discussed by them in a manner which will be hereinafter shown.

When the jury retired, upon the first ballot they stood nine for conviction and three for acquittal, those for conviction being divided in their opinion as to the number of years appellant ought to be given, but ranging from two to ten years, with one man perhaps being a little higher than that; but three of the jurors were holding out for acquittal. After the verdict was reached affidavits were made by some of the jurors, which affidavits were attached to the motion for new trial, but in the hearing of this motion all of the jurors were brought into court and testified upon the issue of the misconduct of the jury, except one who was temporarily out of the county.

To embrace in this opinion the complete testimony of the jurors with reference to this matter would extend it beyond all reasonable bounds, because the testimony covered many pages in the bill of exceptions to the action of the court in overruling the motion for a new trial.

Only two of the jurors, M. C. McWhirter and J. J. Pace, denied having heard any discussion in the jury room with reference to the former conviction of appellant, or that one of his trials resulted in a hung jury, they claiming that after the jury was discharged they heard some mention of it, but the statement of the juror Pace in this respect is sharply challenged by the statement of the juror D. W. Clayton. Clayton, in substance, testified that he was for acquittal, and held out for acquittal until a short time before the jury came together upon the three year verdict. He claims he was discussing the matter with Pace and trying to get Pace to come over with him and the others and agree to an acquittal, and that Pace told him in that connection that this case had been tried twice before, and that one trial was a hung jury and the next trial defendant got twelve years in the penitentiary, and that he, Pace, could not agree to an acquittal by reason of that fact. Clayton claims that he had been for acquittal up to the time this argument was used by the juror Pace, and that then he and the two other jurors, who had

been holding out for acquittal, concluded it would be better to come to the three year proposition as some other jury might give him a higher penalty. All of the jurors who testified agreed that at some time during the deliberations the fact of the defendant's previous conviction with a twelve year sentence was discussed, some claiming that they heard nothing about one former trial resulting in a hung jury; some testifying that the matter of his brother having been convicted and given five years was mentioned, and some claiming that they did not hear this. The first mention of the result of the former trials in the case, either of appellant or his brother, seems to have been before the case went to the jury, one juror testifying that after they had gone to their room and retired for the night some juror remarked that "from the questions that are being asked it appears this case has been tried before;" that one of the other jurors spoke up and said, "Yes, this case has been tried twice before, one time resulting in a hung jury and the other time a conviction with twelve years in the penitentiary, and that his brother Ira Cotton had also been tried and given five years." It seems that this conversation was not heard by all the jurors as they occupied different sleeping rooms, and some of them were not in a position where they could have heard it, and some of them in the room where this conversation occurred seem not to have heard it. One of the jurors, Norris, testified substantially that someone in the jury room during the deliberations said that the appellant had been given twelve years before by a jury, and had a hung jury in another trial, and that his brother had gotten five years, and that he himself said that as he had gotten twelve years before it looked like he ought to be satisfied with three years, and that some of the other jurors said he had been given twelve years in the penitentiary before and thought he ought to be convicted this time. Another one of the jurors, R. L. Duncan, testified substantially to the same effect, and said that he himself remarked that he had seen in the paper where the appellant had been convicted. The testimony of the various jurors was conflicting as to the particular time during the deliberations when the conversation occurred with reference to the former conviction, but they all practically agree that it was not until the second day that the jury was out, they having retired in the evening of the first day, and the vote at that time stood nine for conviction and three for acquittal, and that all this discussion occurred on the next day a short time before they reached a verdict. Some of the jurors claim that they only heard it mentioned one time; others claim that it was mentioned a number of times during the discussion. As would be expected in the testimony of that many jurors, some put it more clearly than others, the juror McBride stating that in an effort to reach an agreement those for acquittal were arguing that he ought to be acquitted on the ground of self-defense, and the others that he ought to be punished, and that it was during those arguments that the question of his conviction and the twelve year sentence was perhaps mentioned, although he is not sure about

that. The juror Clayton, to whom reference has been made heretofore, during his examination was asked this question: "If it was not a fact that these other jurors who stated that one was given five years, and this one at one time had a hung jury, and got twelve years at another trial, was not an argument to show they could not agree to an acquittal?" and he answered: "I believe it was sorter in that way, but not just straight out that way, just about like a bunch of common farmers would discuss anything that way. It seemed like they sorter based it as an argument." It appears that only one or two jurors prior to the time they were taken on the panel knew anything about the former conviction. One says he was under the impression that appellant had been given seven years, and the other one stated that he only knew it from what he had seen in the paper, and saw that he was convicted. The others testified the only information that they had with reference to a hung jury and the conviction of appellant and his brother, was obtained by them through the discussion in the jury room. Some of the jurors claim that the statement made with reference to the former conviction of appellant came from the foreman of the jury, who made it in an effort to get the jury to come together on a two year verdict.

After a careful examination of the entire statement of facts incorporating the testimony of all the jurors upon this issue, the writer has reached the conclusion that the jurors discussed not only upon one occasion but upon a number of occasions in their efforts to reach a verdict the fact that the brother of appellant had been convicted and given five years in the penitentiary, and that the appellant had been tried once with a hung jury, and again with a conviction and a twelve year sentence, and that this was not a casual reference to the former conviction, but that it was used by the jurors in connection with their arguments among themselves in their effort to reach a verdict.

It is not the purpose of the writer to discuss the legal phase of this question at any great length. In the Smith case, 52 Texas Crim. Rep., 344, 106 S. W. Rep., 1161, the facts disclose that the entire jury was for conviction, ten for life sentence and the other two holding out for the death penalty. A discussion occurred among the jury as to the result of a former trial in which defendant was given ninety-nine years, and it was used by the ten men to get the other two to come over from the death penalty to life imprisonment. Judge Ramsey, in discussing that case, used this language: "We think the true rule is that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried according to law where the conviction is supported by the testimony, *unless the court may fairly and reasonably see in the light of all the circumstances that such reference and discussion did or might have prejudiced the appellant's case.* Here it is manifest, as we believe, that the only effect of the discussion of the former verdict inured to the benefit of appellant. It caused two jurors who were in favor of the death penalty to go over to the ten, and to give

appellant a life sentence. Indeed, the only discussion had was addressed by a juror favoring a life sentence to one of the two jurors standing out for a death penalty, and whatever effect it may have had or did have was to mitigate the sentence and inure to the benefit of appellant." In that case the judgment was affirmed.

In McDougal v. State, 81 Texas Crim. Rep., 179, 194 S. W. Rep., 944, Judge Morrow went into this question at length and referred to and reviewed practically all the cases of any importance upon this question, and it is not necessary for this court to consume the time to repeat. In a summing up of his conclusions after a review of the cases, this language is used: "They (cases referred to) are characterized by no loose expressions, but with cogency of reasoning and clearness of statement declare that, when a jury after it retires to consider its verdict receives other evidence damaging to defendant, the presumption of injury obtains, to rebut which the State must do more than to elicit the conclusions of the jurors that they were not influenced," and concludes that case with this statement: "The evidence, in our opinion, does not show that appellant was not injured by these proceedings. In obedience to the command of Article 837 C. C. P., appellant's motion for a new trial should have been granted."

In the instant case, referring to the testimony of the jurors as hereinbefore set out, we think it cannot be said that injury did not result to the appellant from a discussion of the former conviction with the penalty incident thereto, and with a hung jury on a former trial, and with reference to his brother being convicted for the same offense. It is made manifest that at the time the jury first begun their deliberations that three men on that jury were for acquittal and the others being for conviction and divided as to the punishment they thought ought to be inflicted. For some reason the three men finally came over and agreed to a conviction with the three years punishment, and we cannot, following the substance of the language by Judge RAMSEY in the Smith case, *supra,* say in the light of all the circumstances but that such reference or discussion did or might have prejudiced the appellant's case. It is unfortunate that these matters will arise and are likely to arise always upon the subsequent trial of cases, and we would suggest that where such matters are likely to occur, the trial judges ought to instruct the jury in appropriate language that if any evidence has gotten before them as to any former trials, or if any of the jurors know of any former trial, or the result thereof, that they should not discuss nor consider the same upon their deliberations.

For the errors pointed out this court feels constrained to order the judgment of the lower court reversed and the cause remanded for a new trial.

*Reversed and remanded.*